IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 05-4394-CV-C-NKL ) ) |
| KATHY WAGNER, et al., | ) ) |
| Defendants. | ) ) |

ORDER

In August 2005, Defendant Kathy Wagner ("Wagner") filed a sexual harassment suit against her former employer, Defendant Cookbook Publishers, Inc. ("Cookbook"), as well as her immediate supervisor, Defendant Nick Karson ("Karson"). *See Wagner v. Cookbook Publishers, Inc.*, Case No. 05-4261-CV-C-NKL (W.D.Mo.) ("the underlying case"). Although the initial complaint alleged claims against both underlying defendants under Title VII and various state statutes, a Second Amended Complaint filed on the morning of trial raised only one Count for negligent infliction of emotional distress against Karson. Wagner prevailed in a one day bench trial and was awarded $100,000 in actual damages and $200,000 in pain and suffering. Prior to the conclusion of that case, Plaintiff American Family Mutual Insurance Company ("American Family") filed this action seeking a declaration that it had no duty to defend or indemnify Karson under his

1

homeowner's insurance policy. Pending before the Court is American Family's Motion for Summary Judgment [Doc. # 47]. For the reasons set forth below, the Motion is granted.

## I. Factual Background

### A. The Underlying Case

The following facts are not in dispute. Wagner worked at Cookbook's Sedalia plant from January 2000 to September 29, 2004, under the direct supervision of Karson, the plant manager. Although she saw Karson occasionally out of the office at work-related functions, she had no relationship with him outside of work.

On more than 200 occasions over the span of several years, Karson forced Wagner to listen to stories about his private sexual encounters, to look at sexually explicit photographs or computer images, to listen to sexually explicit voicemail messages, and to read or listen as he read sexually explicit e-mail. This conduct occurred both in his office and in hers, and he frequently locked the door while they were speaking. He continued showing her explicit pictures and emails and forcing her to listen to voicemails and graphic recounts of his escapades even after she made it clear that she was not interested. He threatened to get her fired if she reported his behavior to anyone. Despite his protracted verbal harassment, Karson never touched Wagner in a sexually inappropriate manner.

Wagner filed suit in August 2005 alleging six counts for hostile work environment in violation of Title VII and the Missouri Human Rights Act, constructive discharge

under Title VII and state law, and retaliation under Title VII and state law.  Wagner amended her Complaint in February 2006 to add a seventh count for intentional, reckless, or negligent infliction of emotional distress.  All seven counts were eventually dismissed with prejudice against Cookbook by stipulation but the case proceeded to a bench trial against Karson on the negligent infliction of emotional distress claim.

**B.    Karson's Homeowner's Policy**

While Karson was sexually harassing Wagner at work, he had a homeowner's policy through American Family which contained the following coverage language:

> LIABILITY COVERAGES - SECTION II
>
> COVERAGE D - PERSONAL LIABILITY COVERAGE
>
> We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy. . . .
>
> DEFENSE PROVISION
>
> If a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this policy applies, we will provide a defense at our expense by counsel of our choice. We will defend any suit or settle any claim for damages payable under this policy as we think proper.

The DEFINITIONS section of the policy defines the term "occurrence" as follows:

> 9.    Occurrence means an accident, including exposure to conditions, which results during the policy period, in:
> a.    bodily injury; or
> b.    property damage.
> Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence.

3

The DEFINITIONS section further defines "bodily injury" and "property damages" as follows:

> 1. Bodily Injury means bodily harm, sickness or disease. It includes resulting loss of services, required care and death. Bodily injury does not include: . . . c. emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person. . . .
>
> 11. Property Damage means physical damage to or destruction of tangible property, including loss of use of this property. Loss of use of tangible property does not include any resulting loss of value of such damaged property.

## II. Discussion

The parties agree that Missouri law controls the outcome of this declaratory judgment action. The interpretation of an insurance policy is a question of law. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129 (Mo. 2007). In interpreting an insurance policy, the Court "applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Id.* (internal quotations omitted). "The burden of proving coverage is on the insured, despite the insured's denomination as defendant in a declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Stockley*, 168 S.W.3d 598, 600 (Mo. Ct. App. 2005).

### A. Indemnification

Karson's homeowner's policy provides liability coverage only for an "occurrence," which means an "accident" resulting in "bodily injury" or "property damage." The term "accident" is not defined in policy so it must be given its plain meaning. The Eighth Circuit recently held that "Missouri insurance law uses a dictionary

4

definition of 'accident': 'An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned or unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by accident.'" *Wood v. Foremost Ins. Co.*, 471 F.3d 931, 935 (8th Cir. 2006) (*quoting West v. Jacobs*, 790 S.W.2d 475, 477 (Mo. App. 1990); *see also American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) (quoting same definition). Karson's repeated efforts on over 200 occasions to share his sexual exploits with Wagner, to show her sexually explicit photographs and computer images, and to make her listen to graphic voicemail messages and e-mails cannot be considered "an undesigned, sudden and unexpected event" that "takes place without one's foresight or expectation." He repeatedly came into her office or ordered her into his, frequently locked the door, continued to force the images, messages, and stories upon her after she told him she wasn't interested, and threatened her job if she told anyone else about it. Even if he did not understand its impact on his victim, his conduct was no accident.

Wagner directs the Court's attention to *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 49 (Mo. Ct. App. 1998), in which the Missouri Court of Appeals held that the word "accident" used to define "occurrence" in an insurance policy could include a negligent misrepresentation. Wagner argues that Karson's conduct was also negligent insofar as he did not know, but should have known, that his conduct would injure her. Thus, argues Wagner, Karson's negligent conduct should be considered accidental. *Wood*

5

*v. Safeco* is inapposite for two reason. First, the injury caused by the negligent misrepresentation in *Wood v. Safeco* was property damage rather than bodily injury and involved an inspector's negligent failure to discover flood damage. Secondly, the policy at issue in that case defined "occurrence" as an accident which results in "*personal* injury or property damage," *id.* at 48 (emphasis added), rather than "*bodily injury* or property damage" as in the instant case.[1] Missouri courts have explained in other insurance cases that "'bodily injury' and 'personal injury' are not synonyms and that these phrases have two distinct definitions. The term 'personal injury' is broader and includes not only physical injury but also any affront or insult to the reputation or sensibilities of a person. 'Bodily injury,' by comparison, is a narrow term and encompasses only physical injuries to the body and the consequences thereof." *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 453 (Mo. Ct. App. 1998). Thus, the holding of *Wood v. Safeco* sheds very little light on what kind of negligent conduct causing bodily injury may be considered accidental within the meaning of the instant policy.

Even assuming that Karson's campaign of inappropriate behavior did fall within the line of cases defining accident more broadly to include other kinds of negligent conduct, the policy at issue in this case expressly carves out from the definition of bodily injury any "emotional or mental distress, mental anguish, mental injury, or any similar

---

[1] The holding in *Wood v. Safeco* was premised on an earlier decision involving an insurance contract which did define "occurrence" as an "accident . . . which results in *bodily* injury or property damage," *Scottsdale Ins. Co. v. Ratliff,* 927 S.W.2d 531, 532 (Mo. Ct. App. 1996), rather than "personal injury and property damage" as was the case in *Wood v. Safeco* itself. Like *Wood v. Safeco*, however, the actual injury in *Scottsdale Ins. Co. v. Ratliff* involved only property damage.

6

injury *unless it arises out of actual bodily harm to the person*." (Emphasis added). Although Wagner sued only for negligent infliction of emotional distress, she argues in her opposition suggestions that "as a component of her emotional injury, Wagner suffered physical harm." Sugg. in Opp. at 10. Her language is telling: Wagner does not allege that her emotional distress arose from any bodily injuries but rather that any physical symptoms were a component of her emotional injury. However, emotional injuries are not considered bodily injuries within the meaning of the policy unless they arise from bodily injuries; i.e., unless the emotional distress was caused by some physical injury. For example, if Karson's negligent conduct caused Wagner to lose an eye and she had nightmares about being blind, that emotional distress would arise from a bodily injury and therefore fall within the exception. Instead, Wagner merely argues that her emotional injuries caused physical symptoms. The causal order is reversed. It would make little sense for a policy that defined away coverage for mental and emotional injuries to still cover the physical symptoms of those injuries. If such symptoms were considered bodily injuries, the exception for "emotional or mental distress, mental anguish, mental injury, or any similar injury" would be meaningless.

Because Karson's negligent infliction of emotional distress was not an accident resulting in bodily injury, American Family has no duty to indemnify him for Wagner's damages.

    **B.**     **Defense**

Under Missouri law, "the duty to defend is broader than the duty to indemnify because the insurer's duty to defend arises when there is merely the potential for coverage." *Royal Ins. Co. of Am. v. Kirksville College of Osteopathic Med.*, 304 F.3d 804, 807 (8th Cir. 2002). "The duty of a liability insurer to defend pursuant to its policy is determined by comparing the language of the insurance contract and the allegations of the petition in the action brought by the person injured or damaged." *Standard Artificial Limb v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). "If the complaint alleges facts which state a claim potentially within the policy's coverage, there is a duty to defend." *Id*.

Wagner's Second Amended Complaint alleges that Karson read sexually explicit emails to her, showed her pornographic images, played her sexually explicit emails, related graphic details of his sex life, threatened her job, and constructively discharged her. Although she alleges in the final paragraph that as a "direct and proximate result of Defendant Karson's actions, [Wagner] suffered and continues to suffer injury in the form of emotional distress and physical injury and illness", nothing in the Second Amended Complaint alleges any independent bodily injury which might be considered an accident within the meaning of the policy language. At best, the policy alleges that the emotional distress Karson inflicted on Wagner manifested physical symptoms. As discussed in the preceding section, such symptoms do not fall within the policy's definition of bodily injury. Thus, Wagner did not allege a covered occurrence within the policy language and American Family had no duty to defend.

III.	Accordingly, it is hereby

ORDERED that American Family's Motion for Summary Judgment [Doc. # 47] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  March 29, 2007  
Jefferson City, Missouri